***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Hedrick and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence, rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Hedrick, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Worker's Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from September 20, 1965, to the date of the hearing before the Deputy Commissioner.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Statute § 97-57.
5. Defendant has stipulated that the plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on December 9, 1997, by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records are stipulated into evidence for consideration by the Industrial Commission.
6. Plaintiff's income for the fifty-two (52) weeks prior to his diagnosis of asbestosis was $49,349.00, which was sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year of 1997, which is $512.00. By separate stipulation signed by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
7. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N. G. Gen. Statute § 97-12, and the defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the Commission may by order remove plaintiff from further exposure pursuant to N.C. Gen. Statute § 97-62-5(b).
9. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Statute §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 B. What benefits, monetary and/or medical, is plaintiff entitled to be received, if any?
10. The parties submitted for consideration by the Commission the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Fred M. Dula
c. Dr. Richard C. Bernstein
d. Dr. George L. Grauel
e. Dr. Albert Curseen
f. Dr. Andrew Gray Bullard
g. Dr. Robert Shaw
h. Dr. Ray Bouzieard
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from September 20, 1965, to date of the hearing before the Deputy Commissioner, which is more than thirty-five (35) years.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is three-fourths of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's. Defendant has approximately 1,500 employees in their facility in Plymouth, North Carolina.
3. There are two different types of boilers used at the facility in Plymouth, North Carolina. The first is a recovery boiler, which is used to cook the wood pulp. The second type is the steam producing boilers, which are used for energy and heat. There are a total of five paper making machines within the facility. In addition, there are hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used to dry the wet pulp/paper. The boxes in which the insulation was stored would be labeled as asbestos, and presently much of the asbestos insulation is labeled with stickers.
4. Plaintiff has held several different job positions during his more than 35 years of employment with defendant. He has worked in the boiler room, as a pipe fitter, a pipe fitter helper, a steam trap repairman, and as a steam trap mechanic. Throughout his employment, he was exposed to asbestos at various places throughout the plant.
5. Plaintiff was heavily exposed to asbestos during the twenty years when he worked in the boiler/turbine room. At that time, one of his job duties included blowing the asbestos insulation dust off the boilers with compressed air. During these blow downs, the dust would come right off of the insulation. He noticed that the boxes of insulation were clearly labeled as asbestos containing. As a pipe fitter helper and pipe fitter, he was exposed to asbestos when he knocked asbestos containing insulation off the pipes so he could take measurements. He often used a ball-ping hammer to knock off the insulation, and it caused the air to become foggy with dust. He was also responsible for cleaning up the asbestos insulation that fell to the floor. He was additionally exposed when he had to cut asbestos containing gaskets and scrape pipe flanges with a wire brush. As a steam trap repairman and mechanic, he was exposed to asbestos from the thousands of steam pipes that were all covered with asbestos insulation.
6. Plaintiff was not provided with a respirator to protect himself from exposure to asbestos. Plaintiff is a non-smoker and none of his family members smoke around him.
7. Plaintiff was exposed to asbestos containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1965 until the date of the hearing before the Deputy Commissioner.
8. The following medical records confirming the diagnosis of asbestosis were submitted for review of the Industrial Commission by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey, Division of Occupational Environmental Medicine of Duke University, dated December 9, 1997. Dr. Darcey took an occupational history from plaintiff, which included an account of plaintiff's exposure to asbestos at his place of employment with defendant. It was the opinion of Dr. Darcey that plaintiff has a clinical diagnosis of asbestos related pleural changes and mild asbestosis. His conclusion was based on plaintiff's history of significant exposure to asbestos with adequate latency to develop asbestosis, and an ILO chest x-ray and B-read and high resolution CT scan of the chest showing pleural and interstitial changes consistent with asbestosis.
 B. Dr. Darcey, as part of his report, recommended that the plaintiff undergo periodic monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He further recommended that plaintiff should avoid further exposure to asbestos dust. Finally, in addition to his increased risk of developing asbestosis, plaintiff was and remains at an increased risk of developing lung cancer and mesothelioma, as opposed to non-exposed individuals.
 C. A CT scan and chest x-ray dated July 26, 1997, interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was his opinion that there were bilateral diaphragmatic plaques and mild diffuse-type pleural thickening bilaterally. In addition, areas of mild interstitial abnormality were noted in both lungs including a short, thickened interlobar line extending to the pleural surfaces in the non-dependent portions of the lung bases. It was the overall impression of Dr. Dula that there existed interstitial, diaphragmatic and pleural changes consistent with asbestosis. In addition, a repeat CT scan and chest x-ray was performed on September 28, 1999, and interpreted by Dr. Dula. His overall impression was that the findings were consistent with asbestosis, yet there were no changes since the prior study.
 D. Dr. George L. Grauel, a B-reader, evaluated a chest x-ray of plaintiff, dated August 28, 1999. Based on his evaluation, Dr. Grauel identified a fine to medium irregular opacity pattern within the mid- and lower-lung zones. He reports that the opacities are of low profusion and may be associated with underlying pneumoconiosis. In addition, en profile pleural plaque was identified along the left lateral chest wall, which may be associated with an underlying pneumoconiosis.
 E. Dr. Richard C. Bernstein, of Pulmonary and Critical Care Medicine, a B-reader, also evaluated the August 28, 1999, chest film. It was his conclusion that there were parenchymal abnormalities present, which is consistent with a pneumoconiosis.
 F. Dr. Albert Curseen examined plaintiff on August 31, 1999, and performed a pulmonary function exam on plaintiff. It was the opinion of Dr. Curseen that plaintiff has an extremely strong history for asbestos exposure and the preponderance of medical evidence substantiates the diagnosis of asbestosis. He recommended annual radiographs to screen against the increased risk for pulmonary malignancies, as well as to follow the course of his asbestosis.
 G. Dr. Robert Shaw, a physician specifically assigned to medically monitor the employees of defendant, noted in his report dated July 15, 1988, that plaintiff had small plaque on his left chest wall.
 H. Dr. Ray Bouzieard, Centers for Disease Control, a B-reader, reviewed a chest x-ray dated May 12, 1988, and concluded that there were pleural abnormalities consistent with pneumoconiosis. In addition, he noted that there existed small left chest wall plaque.
 I. On January 4, 1999, plaintiff was examined by Dr. A. Gray Bullard, a member of the North Carolina Occupational Disease Panel. Dr. Bullard also reviewed the pulmonary functions tests performed at Pitt Memorial Hospital, reports of CT scan and chest x-ray, and medical records that were provided by the parties. Based on this information, it was Dr. Bullard's impression that plaintiff suffered from asbestos related pleural changes and mild pulmonary asbestosis. He recommends that plaintiff have yearly follow up with a physician including radiographic studies because of the risks of lung cancer, mesothelioma and further interstitial lung disease. He also instructed plaintiff to avoid any further exposure to asbestos dust.
9. Plaintiff suffers from asbestosis and asbestos related pleural disease as a result of his many years of asbestos exposure while employed by the defendant. His pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
10. The plaintiff's wages for 1997 were $49,349.00. Plaintiff's average weekly wage was $949.02, entitling the plaintiff to the maximum worker's compensation rate of $588.00, the rate at the time of his removal by Order filed on May 16, 2002.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $512.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
9 By agreement of the parties, the plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a week rate of $588.00, commencing on May 16, 2000. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, December 13, 1999, until paid in full. The interest shall be paid in full to the claimant and is subject to attorneys' fees. N.C. Gen. Stat. §97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the 7th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER